# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NANCY LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 12-CV-4695 |
| | ) | |
| CITY OF CHICAGO and OFFICER STEVEN LEVEILLE, | ) ) | Judge Robert M. Dow, Jr., |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nancy Lewis has sued the City of Chicago and Chicago Police Officer Steven Leveille for violations of state and federal law stemming from an incident on July 3, 2011. Count I is brought pursuant to 42 U.S.C. § 1983 and alleges excessive force. Plaintiff also alleges state law violations for battery, indemnification, and *respondeat superior* (Counts II-IV). Defendants have moved for summary judgment on all counts. For the reasons set forth below, the Court grants Defendants' motion for summary judgment [36] on Count I and dismisses without prejudice Plaintiff's state law claims of battery, indemnification, and *respondeat superior* (Counts II-IV).

## I. Factual Background[1]

On the morning of July 3, 2011, Plaintiff Nancy Lewis received a phone call from her fiancé (now husband), Anthony Byers, who asked her to come outside and retrieve his personal belongings because he was being arrested. After the call, Plaintiff left Byers' apartment and approached the scene of his arrest, which was in an alley across the street from 7001 S. Throop

---

[1] Where the parties disagree over relevant facts, the Court sets forth the competing versions. In addition, the Court resolves genuine factual ambiguities in Plaintiff's favor. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

Street. Byers already had been arrested and handcuffed when Plaintiff arrived, and Plaintiff testified that the officers were attempting to place him in the squad car as she approached. According to the officers, Byers had been uncooperative with Officer Leveille as he was being put into the vehicle.

Once she arrived, Plaintiff claims that Officer Leveille said, "[g]et the fuck away from the car." Officer Mitchell then told Plaintiff that she could get Byers's belongings. By this time, Officer Leveille had finished placing Byers in the back of the squad car and shut the door. According to Lewis, she asked for clarification as to which officer's orders to follow and, having heard nothing in response, decided to follow Officer Mitchell by bending over and attempting to retrieve Byers' belongings.

As Plaintiff was bending down, Officer Leveille opened the front driver's side door of the police vehicle that he was driving that day. Plaintiff claims that, when the door opened, it struck her on the portion of her left hand between her pinkie and wrist.[2] Plaintiff believes that Officer Leveille intended to hit her with the door because his face was red. To her, Officer Leveille appeared frustrated because he and Officer Mitchell had told Plaintiff to do different things and Plaintiff chose to obey Officer Mitchell. Plaintiff doesn't remember if the contact with the car door was enough to make her arm move; however, she testified that Officer Leveille said, "Oh my God, I guess I broke her damn arm." After the driver's side front door of the vehicle allegedly struck Plaintiff, Officer Leveille got into the driver's seat, closed the door, and then drove away. Plaintiff then retrieved Byers' items and walked away. Plaintiff admits that Officer Leveille never personally struck Plaintiff with his hand or feet, nor did any part of Officer Leveille's body come into contact with Plaintiff's body. In addition, Plaintiff was neither

---

[2] Plaintiff testified that she had pain and swelling following the incident and that she went for an MRI.

arrested nor told that she was not free to leave. Finally, Officer Leveille did not instruct Plaintiff to come towards the vehicle, but rather told her to get away.

## II.     Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-

movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

### A. Plaintiff's Fourth and Fourteenth Amendment Excessive Force Claim

Plaintiff brings a § 1983 claim against Defendant Officer Leveille for excessive force. To prove a claim under § 1983 against the officers, Plaintiff must show that a person acting under color of state law deprived her of a right, privilege, or immunity secured either by the Constitution or federal law. See, *e.g. Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). Defendant Leveille does not dispute that he was acting under color of state law at the time of the incident.

Claims of excessive force generally are analyzed under the Fourth Amendment's reasonable seizure standard. See *Graham v. Connor*, 490 U.S. 386, 395 (1989). Such a claim, however, requires a seizure of the complaining party. See *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir. 1998). A seizure for purposes of the Fourth Amendment can occur when an officer "by means of physical force or show of authority has in some way restrained the liberty of a citizen." *United States v. Mendenhall,* 446 U.S. 544, 552 (1980) (internal quote omitted); see also *Graham v. Connor,* 490 U.S. 386, 395 n. 10 (1989) ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, * * * in some way restrained the liberty of a citizen.") (internal quotation omitted). A person is "seized" under the Fourth Amendment "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall,* 446 U.S. at 554. The Supreme Court further explained the circumstances that might indicate a seizure as follows: "the threatening presence of several

4

officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 554; see also *Duran v. Sirgedas*, 240 Fed.Appx. 104, 110-111 (7th Cir. 2007). A plaintiff "must not only show that her personal liberty had been restrained, *Florida v. Bostick,* 501 U.S. 429, 435–37 (1991), but that she 'actually yield[ed] to a show of authority * * *." *California v. Hodari D.,* 499 U.S. 621, 629 (1991).

Here, the undisputed facts show that Plaintiff was not physically seized. In fact, Defendant Leveille told Plaintiff to get away from the car. At no time was Plaintiff's freedom of movement restrained. The record indicates that there was some type of altercation, but immediately after, Plaintiff went back into her home and Defendant Leveille left the premises.[3] There is no evidence that Defendant Leveille used any amount of physical force on Plaintiff in an attempt to restrict her movement. Plaintiff was not arrested and neither officer on the scene even slightly touched Plaintiff nor made any effort whatsoever to detain her.

Additionally, in regard to whether Plaintiff was effectively seized by a "show of authority," the only instruction from Defendant Leveille in this case was to direct Plaintiff to get away from the car, with which Plaintiff admittedly did not comply. In response, Plaintiff argues that she was scared and believed the officers might shoot her. Plaintiff's Resp. at 4. Even

---

[3] In her response, Plaintiff claims that "an officer's application of force always constitutes a seizure." Resp. at 3. As support, Plaintiff cites an out-of-context quotation from *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011). In *Griffin*, the court was addressing the two ways in which a person's freedom of movement may be restrained. 652 F.3d at 798. Physical force which restrains a person's movement -- not any physical force whatsoever – always constitutes a seizure. *Id.* If physical force doesn't restrict a person's movements, the court in *Griffin* clearly noted that it must be proven that a person submitted to a 'show of authority' by a police officer. *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Moreover, *Hodari D.* explains that "[t]he word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement * * *." 499 U.S. at 626; see also *Carlson v. Bukovic*, 621 F.3d 610, 620 (7th Cir. 2010) ("mere physical contact by an officer, although a significant factor, does not automatically qualify an encounter as a Fourth Amendment seizure").

assuming arguendo that this fear was reasonable, Plaintiff still chose to disobey the only instruction that Defendant Leveille directed toward her and thus she did not "actually yield to a show of authority," which is required to demonstrate a seizure. *Hodari D.,* 499 U.S. at 629. Plaintiff does not dispute this fact, and instead contends that she decided to obey "Officer Mitchell's instructions to bend down and pick up Mr. Byers' belongings." Plaintiff's Resp. at 5. However, this admission merely highlights Plaintiff's disregard of Defendant Officer Leveille's authority, rather than showing submission to such authority. Moreover, Plaintiff does not argue that she was, at any point, seized by Officer Mitchell; instead, she rests on her contention that Defendant Leveille seized her, which is without evidentiary support.

In fact, given that (1) Defendant Leveille did not assert authority over Plaintiff beyond requesting that she leave, (2) Plaintiff did not in any way submit to his request, and (3) Plaintiff indisputably "retrieved Mr. Byers's belongings and walked away" (Pl. SOAF ¶ 15) immediately after the incident, this case is on all fours with *McCoy v. Harrison*, 341 F.3d 600, 605-06 (7th Cir. 2003). In that case, the plaintiff "maintain[ed] that she was 'seized' when [an officer] hit her and dug his fingernails into her arm." *Id*. at 606. "However, [plaintiff] herself testified that, after the altercation, [the officer] 'let me go and just walked … back down the driveway,' and drove away." *Id*. The Seventh Circuit concluded that no seizure had occurred:

> There is no question there was some type of altercation, but immediately after, [plaintiff] got up and went into her home, and [the officer] left the premises. He made no effort to direct or impede her movements. [Plaintiff] herself has testified that [the officer] did not try to restrain her after she was knocked down, nor did he order her to remain where she was. He asserted no authority as to her person and she did not in any way submit to a show of authority.

*Id*. at 605. In other words, "[w]hile [the officer's] actions may have caused her injury, there is no evidence to show he intended to or did acquire physical control over her person . . . nor was there a show of authority and restraint of [plaintiff's] movements." *Id*. at 606. Here, too, under the

6

undisputed facts, no seizure occurred and thus any excessive force claim asserted under the Fourth Amendment standard fails. *Cf. United States v. Ford*, 333 F.3d 839, 844 (7th Cir. 2003) (a non-submitting person was not seized until the officer physically pulled the man's arm); *United States v. Bady*, 503 Fed.Appx. 481, 484 (7th Cir. 2013) (defendant did not submit in attempting to flee by driving around officer's vehicle).[4]

Failing the Fourth Amendment standard, Plaintiff's claims next must be analyzed under the Fourteenth Amendment. See, *e.g.*, *Schaefer*, 153 F.3d at 797. The touchstone of due process is the protection of the individual against the arbitrary action of government. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quotations and citation omitted). However, only the most egregious official conduct can be said to be "arbitrary in the constitutional sense." *Id.* at 846 (citation omitted). Thus, to establish a substantive due process violation, the governmental action in question must be so egregious as to "shock the conscience." *Id.* at 846-47. Negligently inflicted harm cannot satisfy this standard; only "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 848-49.

In her response brief, Plaintiff claims that it is "not necessary" to determine whether Defendant Leveille's actions "shock the conscience" because she maintains that she was unreasonably seized. As set forth above, she was not. Therefore, she has waived any argument that her rights were violated under the Fourteenth Amendment and her excessive force claim fails.

---

[4] This case is controlled by *McCoy* in that after the incident, both citizen and officer immediately went their separate ways unimpeded, and thus "the totality of the circumstances showed that the blow" – here, with a car door – "did not detain the plaintiff significantly." *Acevedo v. Canterbury*, 457 F.3d 721, 725 (7th Cir. 2006). *Acevedo* is distinguishable in that the officer's blow there was a punch delivered with such force that it knocked the plaintiff to the ground and caused him to black out momentarily, after which he "remained in a daze for a time," giving rise to a jury question on whether the plaintiff "was seized by [the officer's] blow to his head." *Id*.

B.     **Plaintiff's State Law Claims**

Because the Court grants summary judgment to Defendants as to the sole claim (Count I) over which it has original jurisdiction, it must now address whether to retain jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3). In addition to a federal claim for excessive force, Plaintiff has asserted state law claims for battery, indemnity, and *respondeat superior*. The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice" in this case,[5] the Court dismisses without prejudice Plaintiff's state law claims for battery, indemnification, and *respondeat superior* (Counts II-IV). In dismissing Plaintiff's federal constitutional claims, the Court expresses no opinion on whether Plaintiff may have viable state law claims. See *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994).

---

[5] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint. *Wright*, 29 F.3d at 1251.

**III.     Conclusion**

For these reasons, the Court grants Defendants' motion for summary judgment [36] on Count I and dismisses without prejudice Plaintiff's state law claims for battery, indemnification, and *respondeat superior* (Counts II-IV).

Dated:  April 28, 2014

Robert M. Dow, Jr.
United States District Judge